IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

G.R.P MECHANICAL COMPANY, INC.,

    **Plaintiff,**

v.

KIENSTRA CONCRETE, INC.,
RCS CONSTRUCTION, INC., and
UNITED FIRE & CASUALTY COMPANY,

    **Defendants.**        No. 05-CV-389-DRH

## MEMORANDUM & ORDER

**HERNDON, District Judge:**

### I. INTRODUCTION

Before the Court is plaintiff G.R.P. Mechanical Company, Inc.'s ("GRP") Motion to Reconsider (Doc. 41) the Court's August 26, 2005 order (Doc. 36), which granted defendant United Fire & Casualty Company's ("United") Motion to Sever (Doc. 24) GRP's claims against United from its claims against defendants Kienstra Concrete, Inc. ("Kienstra") and RCS Construction, Inc. ("RCS"). GRP also moves the Court to reconsider its subsequent order, also issued on August 26, 2005 (Doc. 37), which granted in part and denied in part GRP's Motion to Remand (Doc. 4).

Specifically, upon United's Motion to Sever, the Court determined that it had no federal subject matter jurisdiction over GRP's claims against Kienstra and

RCS, and therefore granted in part GRP's Motion to Remand with respect to those claims. (Doc. 37.) However, the Court found that diversity jurisdiction existed pursuant to **28 U.S.C. § 1332** between GRP and United, and so GRP's motion to remand with respect to those claims was denied. Further, United had previously filed a declaratory judgment action with this court regarding the duty to defend and indemnify GRP with respect to the Commercial General Liability ("CGL") insurance policy at issue in this matter.[1] Because of this pre-existing lawsuit, which was assigned to Judge Reagan, GRP's severed claims against United in the instant suit were also referred to Judge Reagan.[2]

## II. FACTUAL BACKGROUND

To briefly summarize the relevant facts, GRP filed the instant lawsuit in the state Circuit Court of Madison County, Illinois. GRP was hired as a general contractor by Premcor Refinery Group, Inc., in order to construct a Dissolved Air Flotation ("DAF") unit. (Doc. 2, ¶ 2.) GRP then contracted with RCS to pour the concrete vessel of the DAF. (*Id*. at ¶¶ 2, 13.) Kienstra was hired in order to manufacture and supply concrete to RCS. (Doc. 11, ¶¶ 3, 16.) Along the way, GRP ran into several problems with the DAF unit – it was found to have leaked during testing and therefore had to be rebuilt. (Doc. 25, p. 2.)

United is GRP's insurance carrier on its CGL policy. (Doc. 10, ¶ 5.)

---

[1] ***See United v. GRP*, No. 05-175-MJR (S.D. Ill.)(Reagan, J.)**.

[2] GRP's instant Motion to Reconsider, however, was referred back to Judge Herndon for disposition, as he was the Judge who issued the orders GRP now seeks to amend.

GRP made a claim on its CGL policy for the alleged loss suffered in having to rebuild the DAF unit. (Doc. 2, ¶ 23 and Ex. B, and Doc. 11, ¶ 25.) United denied GRP's claim. (*Id.*)

Before the claims were severed by order of the Court, Count I of GRP's Complaint alleged that RCS, a subcontractor, breached its contract with GRP to pour the concrete vessel of the DAF unit by, among other things, failing to pour the concrete vessel properly and in a good and workman-like manner. (Doc. 2, ¶¶ 41-46.) Count II alleged negligence against RCS. (*Id.* at ¶¶ 47-50.) Count III alleged products liability against Kienstra, a subcontractor of RCS, in that the raw concrete it manufactured and supplied for the job was unreasonably dangerous. (*Id.* at ¶¶ 47-50.) Count IV alleged negligence against Kienstra. (*Id.* at ¶¶ 55-58.) The counts of GRP's Complaint remaining in federal court are directed at United, GRP's insurance carrier, because it denied insurance coverage for GRP's claim on its CGL policy. Count V alleges breach of contract (*Id.* at ¶¶ 59-64); Count VI alleges vexatious refusal to pay under 215 ILCS 5/155 (*Id.* at ¶¶ 65-67); Count VII (mistakenly labeled Count VI in GRP's Complaint) alleges violation of the Illinois Consumer Fraud Act, 215 ILCS 5/155 (*Id.* at ¶¶ 68-73); and Count VIII (mistakenly labeled Count VII) alleges fraud (*Id.* at 74-79).[3]

United removed GRP's case to federal district court based upon diversity jurisdiction, pursuant to **28 U.S.C. § 1332**, maintaining that although Kienstra and

---

[3] Technically, Counts V through VIII as listed above, are now actually Counts I through IV, due to the severance of GRP's claims against United from its claims against Kienstra and RCS.

RCS are residents of the same state as GRP, diversity jurisdiction should exist because GRP misjoined them as parties to its suit against United. (Doc. 1.) As stated previously, GRP then moved to remand while United thereafter filed its moved to sever claims.

## II. ANALYSIS

### A. MOTION TO RECONSIDER PURSUANT TO RULE 59(e)

Shortly after the Court issued the relevant orders on August 26, 2005, GRP filed its Motion for Reconsideration on August 31, 2006. (Doc. 41.) Although GRP failed to specify the particular rule of civil procedure it based this motion on, as the motion was filed within 10 days after issuance of the order for which it seeks reconsideration, this motion is properly made pursuant to **Federal Rule of Civil Procedure 59(e)**. *See* FED. R. CIV. P. 59(e) ("**Any motion to alter or amend a judgment shall be filed no later than 10 days after entry of the judgment**"). A **Rule 59(e)** motion "must clearly establish either a manifest error of law or fact or must present newly discovered evidence." ***LB Credit Corp. v. Resolution Trust Corp.*, 49 F.3d 1263, 1267 (7th Cir. 1995)**(citing *FDIC v. Meyer*, **781 F.2d 1260, 1268 (7th Cir.1986)**).

Determining whether to grant a **Rule 59(e)** motion is at a district court's discretion. *See Pickett v. Prince*, **207 F.3d 402, 407 (7th Cir. 2000)**(stating "**[A] motion to reconsider a ruling is constrained only by the doctrine of the law of the case. And that doctrine is highly flexible, especially when a judge is being**

**asked to reconsider his own ruling." (citations omitted))**. "The rule essentially enables a district court to correct its own errors, sparing the parties and the appellate courts the burden of unnecessary appellate proceedings." *Russell v. Delco Remy Div. of General Motors Corp.*, **51 F.3d 746, 749 (7th Cir. 1995) (citation omitted)**. The function of a motion to reconsider a judgment is not to serve as a vehicle to re-litigate old matters or present the case under a new legal theory. *Bordelon v. Chicago School Reform Bd. of Trustees*, **233 F.3d 524, 529 (7th Cir. 2000)(citing** *Moro v. Shell Oil Co.*, **91 F.3d 872, 876 (7th Cir. 1996))**. Moreover, the purpose of such a motion "is not to give the moving party another 'bite of the apple' by permitting the arguing of issues and procedures that could and should have been raised prior to judgment." *Yorke v. Citibank, N.A.* (*In re BNT Terminals, Inc.*), **125 B.R. 963, 977 (N.D. Ill.1990) (citing** *F.D.I.C. v. Meyer*, **781 F.2d 1260, 1268 (7th Cir.1986)(other citations omitted))**. **Rule 59(e)** is not a procedural folly to be filed by a losing party who simply disagrees with the decision; otherwise, the Court would be inundated with motions from dissatisfied litigants. *Id.*

**B.     REVISITING THE RULE 20 JOINDER REQUIREMENTS**

In GRP's motion, it argues that the Court, in granting United's Motion to Sever, made a mistake of law. The crux of GRP's argument is that the Court misapplied the **Federal Rule of Civil Procedure 20** legal standard for determining whether defendants United, Kienstra and RCS were properly joined in the original

suit. (Doc. 41, pp. 2-5.) **Rule 20(a)** governs the standard for proper joinder of parties and provides that "all persons . . . may join in one action as defendants if there is asserted against them jointly, severally, or in the alternative, any right to relief in respect of or arising out of the same transaction, occurrence, or series of transactions or occurrences and if any question of law or fact common to all defendants will arise in the action." **FED. R. CIV. P. 20(a)**. Namely, GRP argues that although the Court considered whether joint and several and also alternative liability existed between all Defendants, it failed to consider whether *several* liability existed. (Doc. 41, p. 3.) As a result, GRP asserts that all three Defendants are subject to several liability from the same transactions or occurrences or series of transactions or occurrences. (*Id.*) Secondly, GRP asserts that the Court overlooked that, if United's view of coverage prevails, then United could be alternatively liable to RCS and/or Kienstra, depending upon whether the fact-finder determines that faulty construction occurred. (*Id.*)

United opposes GRP's Motion to Reconsider. (Doc. 46.) United argues that GRP fails to comply with **Rule 59(e)** pleading standards, asserting that GRP "has not set forth any legal errors or newly discovered evidence . . . ." (*Id.* at 3.) Instead, United believes GRP simply disagrees with the Court's prior rulings and is now attempting to bring up semantic-based arguments regarding the language of **Rule 20(a)**, which it should have introduced as an argument in its Response to United's Motion to Sever. (*Id.* at 4.) Further, United states that regardless of

determination of liability, GRP will still fail to meet the second prong of **Rule 20(a)**, because GRP has failed to assert common issues of law or fact: United had nothing to do with the construction of the DAF unit and likewise, Kienstra and RCS had no part in GRP contracting for a CGL policy from United.  (*Id.*)

1.  **Several Liability**

As GRP points out, "several liability" is defined in Black's Law Dictionary as "liability that is separate and distinct from another's liability, so that the plaintiff may bring a separate action against one defendant without joining the other liable parties." **BLACK'S LAW DICTIONARY 933 (8th ed. 2004)**.  As part of its argument that the Court did not apply the correct **Rule 20(a)** standard, GRP observes that in the order regarding United's Motion to Sever, the Court cited legal definitions for both "joint and several" as well as "alternative liability," but failed to cite a definition for "several liability."  (Doc. 41, p. 3, citing doc. 36 (August 26, 2005 Order), p. 6, n.4&5.)

GRP's observation holds enough weight to warrant reconsideration of the Court's previous analytical methodology.  Reviewing the substance of its order regarding United's Motion to Sever (Doc. 36), the Court finds it possible that Defendants can be deemed "severally" liable.  United's alleged liability would stem from denial of GRP's claim on its CGL policy, while the alleged liability of either Kienstra or RCS would arise from their actions as well as the contracts for providing or pouring the concrete.  Clearly, and in accord with the legal definition of "several

liability," the alleged liability of United is separate and distinct from the alleged liability of either Kienstra or RCS. Therefore, the Court finds that this particular requirement of **Rule 20(a)** is satisfied – that GRP has asserted a right to relief either jointly, severally or in the alternative against Defendants.

### 2. Same Transaction of Occurrence or Series of Transactions or Occurrences and Common Question of Law or Fact

Now, the Court must proceed to examine whether the next requirement of **Rule 20(a)** is met in this case – whether GRP has a right to relief in respect of or arising out of the same transaction, occurrence, or series of transactions or occurrences, and also whether there exists a question of law or fact common to all Defendants. In its previous order, the Court determined that because Defendants in this case could not be found either jointly and severally or alternatively liable, GRP's claims against Defendants did not stem from the same transaction or occurrence or series thereof, nor did GRP's claims involve common questions of law or fact. (Doc. 36, p. 10.) However, in light of the fact that the Court did not fully consider all aspects of liability to which **Rule 20(a)** applies, it is also now appropriate to reconsider whether new evidence or other equitable justification exists to support a finding that GRP's claims against Defendants stem from the same transaction, occurrence, or series of transactions or occurrences. Additionally, the Court should also consider whether there is an existing common question of law or fact.

Simply stated, GRP maintains that its right to relief boils down to whether there was defective construction of the DAF unit attributable to either

Kienstra or RCS. If so, GRP argues that United was obligated under the CGL policy due to the "subcontractor exception."[4] Naturally, United vehemently opposes the applicability of the "subcontractor exception" to the case at hand.

In support of its motion, GRP cites **Hanna v. Gravett, 262 F. Supp. 2d 643 (E.D. Va. 2003)**, in which a plaintiff brought suit for injuries suffered in an automobile accident against the uninsured driver of the other car and also against plaintiff's own insurance company for denying coverage. The court denied the uninsured driver defendant's motion to sever, finding joinder proper because the plaintiff's right to relief as to both defendants arose out of the same series of transactions or occurrences. **Id. at 647**. GRP opines that **Hanna** is analogous to this case, because the liability of the defendants depend upon a showing of negligence of the uninsured driver defendant and, in this case, liability of the United and Kienstra and/or RCS depends upon a showing of faulty work on the part of either Kienstra or RCS. (Doc. 41, p. 5.) Additionally, GRP asserts that the amount of its damages will have a bearing on each of the Defendants' liability. (*Id.*)

---

[4] This subcontractor exception is found under section I.2.1 of the CGL policy and reads, in pertinent part:
    l. **Damage To Your Work**
        "Property damage" to "your work" arising out of it or any part of it and included in the "products-completed operations hazard."

        This exclusion does not apply if the damaged work or the work out of which the damage arises was performed on your behalf by a subcontractor.

However, the Court in no way intends to convey any illusory simplicity in the interpretation of this exception, as such interpretation would require delving into an intricate examination of several policy-inclusive definitions of terms and other coverage exceptions.

*Hanna*, the Court finds, is somewhat distinguishable as well as non-binding precedent upon this Court, which is the same argument offered by United in its opposing Response.  The difference is that in *Hanna*, there was a specific state statute[5] allowing the plaintiff to join her action against both the uninsured driver and the plaintiff's own insurance company.  *Hanna*, **262 F. Supp. 2d at 646**.  Additionally, United asserted that in *Hanna*, the amount of the plaintiff's damages had a bearing as to the extent of each individual defendant's liability.  *Id.* **at 647**.  (*See also* doc. 46, p. 5.)

*Hanna* lends some interpretative aid to the facts at hand in this matter, but because joinder was allowable under state statute and was not, therefore, solely determined by the merits of the **Rule 20(a)** procedural requirements, it would be wise for the Court to seek further guidance.  As a result, the Court has uncovered two cases which help to illuminate the circumstances surrounding the instant motion, although neither case was cited by the parties.  The first case is *Apache Products Co. v. Employers Ins. of Wausau*, **154 F.R.D. 650 (S.D. Miss. 1994)**, and the second case the court will discuss is *John S. Clark Co., Inc. v. Travelers Indemnity Co. of Ill.*, **359 F. Supp. 2d 429 (M.D.N.C. 2004)**.  Despite the fact that these two cases do not constitute binding precedent the Court is not aware of any binding case law on point, so it was necessary to seek guidance from courts within

---

[5] *Hanna* involved the Virginia Uninsured Motorist Statute, **Va. Code § 38.2-2206(F) (Repl. Vol. 2002)**.

other circuits.

In *Apache*, the plaintiff corporation manufactured foam insulation. *Apache*, 154 F.R.D. at 652. The plaintiff contracted with one of the defendants, Stepan Company ("Stepan"), for a product to be used at its foam insulation manufacturing plant. *Id.* Stepan's product was allegedly defective, which, apparently unbeknownst to the plaintiff, caused the plaintiff's foam insulation itself to be defective. *Id.* The defective foam insulation was then installed on roofs in a number of states, which the plaintiff ultimately had to replace at a cost of over $2,000,000. *Id.* The plaintiff subsequently sued Stepan for claims of product liability (breach of warranty and also negligence). *Id.* In addition, the plaintiff also sued its insurance company, Employers Insurance of Wasau ("Wasau"), for failure to cover and/or defend under the plaintiff's CGL policy. *Id.* Stepan filed a motion to transfer venue to the United States District Court for the Northern District of Illinois, and also urged the court to sever the plaintiff's product liability claims against it from the plaintiff's insurance contract claims against Wasau, pursuant to **Rule 21**. *Id.* at 659. Wasau filed a similar motion to sever, but additionally requested the claims to remain joined until discovery was completed. *Id.*

The plaintiff opposed both motions to sever. *Id.* The *Apache* court examined the issue of severance by examining whether joinder of the defendants was proper pursuant to the requirements of **Rule 20(a)**. *Id.* at 659. During its analysis, the *Apache* court noted that the defendants conceded that there were several

common questions of facts between the claims, such as whether the plaintiff's insulation was defective or whether the defective roofs were caused by the insulation or negligence of the roofing contractors, as well as the reasonableness of costs the plaintiff incurred in replacing the roofs.  *Id.*  However, the defendants maintained that the plaintiff's claims did not arise out of the same transaction or occurrence or series thereof in order to warrant joinder of the defendants in a single suit.  *Id.*  Noting that "there is no strict rule for determining what constitutes the same transaction or series of transactions for purposes of **Rule 20(a)**," and moreover that **Rule 20(a)** "is liberally interpreted in favor of joinder . . . if there are 'enough ultimate factual concurrences,'" the *Apache* court nevertheless believed that the transactions forming the basis of the plaintiff's claims against each of the defendants were "unrelated in any significant way."  *Id.* **at 659-60 (citation omitted)**.

Specifically, the *Apache* court found that the "claims against Stepan [were] solely based on alleged defects in Stepan's product, whereas Wausau [was] defending claims pertaining to its alleged refusal to defend and pay under a liability insurance policy."  *Id.* **at 660**.  Further elaborating, the *Apache* court noted that the claims were of an entirely different nature – many facts relevant to one claim being irrelevant to the others.  *Id.*  Yet, recognizing that there was a "concurrence of factual issues common to the claims," the *Apache* court held that the claims were *not* misjoined, but proceeded to analyze whether it remained in the interest of justice to sever the claims "for the purpose of facilitating transfer of the claims against Stepan

to another forum." *Id.*

Ultimately, the *Apache* court granted Stepan's motion to transfer and also its motion to sever, but allowed the case to remain in the Mississippi district court until the completion of discovery. *Id.* **at 661**. Notwithstanding the plaintiff's objections that a severance would expose it to the possibility of inconsistent findings of facts common to the two defendants, the *Apache* court believed that even if it did not grant the severance, it was quite likely that separate trials would be ordered pursuant to **Rule 42**,[6] even if the case had remained with the originating Mississippi district court. *Id.*

Similarly, in *John S. Clark Co.*, the plaintiff was a building contractor who hired defendant Herrera Masonry, Inc. ("Herrera"),[7] as masonry subcontractors to perform work on the construction project. *John S. Clark Co.*, **359 F. Supp. 2d at 432**. The plaintiff also obtained multiple layers of insurance to cover the construction product, including a series of CGL policies issued by defendant Travelers Insurance Company ("Travelers"). *Id.* The facts further reveal that a

---

[6] **Federal Rule of Civil Procedure 42** reads, in pertinent part:
**(b) Separate Trials.** The court, in furtherance of convenience or to avoid prejudice, or when separate trials will be conducive to expedition and economy, may order a separate trial of any claim, cross-claim, counterclaim, or third-party claim, or of any separate issue or of any number of claims, cross-claims, counterclaims, third-party claims, or issues, always preserving inviolate the right of trial by jury as declared by the Seventh Amendment to the Constitution or as given by a statute of the United States.

[7] The Court notes that the plaintiff in *John S. Clark Co.* also sued defendants Ignacio Herrera and Marina Herrera as individuals, most likely with their association to Herrera Masonry, Inc. For purposes of discussion, the Court will refer to the individual Herreras and Herrera Masonry, Inc. simply as the singular defendant, "Herrera."

portion of the construction project collapsed, for a number of reasons, including allegedly defective masonry work. **Id.** The plaintiff was required to repair and rebuild all of the damages. **Id.**

Subsequently, the plaintiff filed suit in North Carolina state court against defendants Herrera and Travelers, demanding payment and indemnity for its losses suffered from the construction project. **Id.** Specifically, the plaintiff brought claims against Hererra for breach of contract and negligence and brought claims against Travelers for breach of insurance contract, bad faith and unfair and deceptive trade practices in violation of North Carolina statutory law. **Id. at 432-33**. Similar to the instant matter, the plaintiff in the ***John S. Clark Co.*** case claimed that its CGL policies provided coverage for property damage arising from defective subcontractor work, as well as for costs the plaintiff incurred to repair or replace this defective work. **Id.**

Travelers removed the plaintiff's case to North Carolina district court, on the basis of **28 U.S.C. § 1332** diversity jurisdiction, contending that Herrera should be disregarded for jurisdictional purposes and dismissed because it was not a necessary or proper party to the plaintiff's suit against Travelers. **Id. at 433**. Accordingly, Travelers requested that the plaintiff's case be severed so that the claims against Travelers could remain in federal court and the claims against Herrera be remanded back to state court. **Id.**

The ***John S. Clark Co.*** court, among other things, analyzed whether the

plaintiff's claims against Herrera were properly joined with its claims against Travelers in accordance with the requirements of **Rule 20(a)**. *Id.* **at 436-37**. First, the ***John S. Clark Co.*** court looked at whether the plaintiff's claims against each defendant arose from the same transaction or occurrence, or the same series of transactions or occurrences. ***Id.* at 438 (the district court also noting this analysis was done on a case-by-case basis)**. Determining that the claims against both Herrera and Travelers arose out of problems with the construction project allegedly caused by Herrera's improper or defective work, the court further reasoned that the transactional/occurrence requirement of **Rule 20(a)** was thereby met. *Id.* Next, the ***John S. Clark Co.*** looked at whether there was at least one question of law or fact common to all the parties, in order to met the second requirement under **Rule 20(a)**. *Id.*

In order to prevail on its claims against Herrera, the ***John S. Clark Co.*** court reasoned that the plaintiff must prove Herrera performed improper or defective work on the construction project which caused the plaintiff's loss or damages suffered. *Id.* **at 438-39**. The ***John S. Clark Co.*** court also found that the plaintiff needed to prove these "same facts related to causation and damages to support its claim against Travelers for breach of contract because Travelers had denied material allegations related to causation and damages contained in [the plaintiff's] complaint," including the allegations regarding Herrera's defective work (due to the fact that the plaintiff claimed coverage under the CGL policies for defective subcontractor work

or its damages suffered therefrom). *Id.* **at 439**.

Noting that while the plaintiff also need prove that the language of its CGL policies supported its theory of coverage for defective subcontractor work, a finding of liability still required the plaintiff to prove the cause of the collapse of the construction project was due to Herrera's allegedly defective masonry work. *Id.* Further, the liabilities of both defendants centered upon the resulting amount of loss or damages the plaintiff incurred. *Id.* As such, the court determined that the plaintiff's claims against Herrera and its claims against Travelers shared at least one common issue of fact for purposes of **Rule 20(a)**, and thus, the other procedural requirement was met.

Lastly, the district court examined whether considerations of "fundamental fairness, judicial economy, prejudice, and undue delay, as well as the threat of duplicitous litigation and inconsistent verdicts," warranted a severance. *Id.* **at 441**. As all of the plaintiff's claims hinged "upon proof of common issues of fact related to causation and damages," and because there existed the threat of duplicitous litigation and inconsistent verdicts, the district court concluded that the better option was to decline severing the claims and therefore, granted the plaintiff's motion to remand for lack of federal subject matter jurisdiction. *Id.*

Even though ***Apache*** is a district court case out of Mississippi, and ***John S. Clark Co.*** is a district court case out of North Carolina, the Court finds these cases instructional for determining whether GRP's claims against United

should be severed from its claims against Kienstra and RCS – as many of the facts and issues are similar. While ***Apache*** ultimately granted the severance due to the belief that defendant Stepan should be allowed to litigate in a different venue, and ***John S. Clark Co.*** denied the severance, these two cases can be accorded – both district courts found the defendants properly joined. The **Rule 20(a)** requirements were met in both cases, but the ***Apache*** court granted severance for judicial economy reasons.

Conceivably then, GRP's injury arises from the defective construction of the DAF unit, which allegedly was caused by defective work of either Kienstra and/or RCS. The construction of the DAF unit would thereby be the same transaction or occurrence or series of transactions or occurrences required by **Rule 20(a)**. Further, as in ***Apache*** and ***John S. Clark Co.***, there exists a common issue of fact related to the causation and also GRP's damages surrounding the construction of the DAF unit. So while the Court finds that the procedural requirements of **Rule 20(a)** are met, there is still the concern of whether granting GRP's Motion to Reconsider would aid in the effort of judicial economy, which is the actual purpose behind **Rule 20** joinder. ***See Elmore v. Henderson*, 227 F.3d 1009, 1012 (7th Cir. 2000)**.

### 3. Judicial Economy

Before, due to the ongoing declaratory judgment action filed by United regarding GRP's CGL policy, the Court was concerned that there would be an inconsistency of judicial findings regarding interpretation of the policy language if severance was not granted and the entire case was remanded back to state court. Yet, now it seems that if GRP's claims against United are severed from its claims against Kienstra and RCS, there still remains a risk of inconsistent judicial findings if both the federal and state cases ultimately determine the issue of subcontractor liability. While this possibility existed when the Court issued its orders regarding the severance and remand, because the Court did not find that the **Rule 20(a)** procedural requirements were met at that time, it was more consanguine to keep all the claims involving interpretation of the CGL policy with the same court, instead of dividing them between state and federal court.

However, because upon revisiting the law, it now seems clear that the **Rule 20(a)** joinder requirements are met and it may serve in the interests of judicial economy to grant GRP's Motion to Reconsider, the Court opines that the outstanding federal declaratory judgment action may possibly be stayed, pending the outcome of GRP's suit against defendants. Such abeyance would thereby eliminate the exigency fostered by simultaneous federal and state lawsuits. The Court clarifies that this is merely conjecture – it remains uncertain whether the federal declaratory judgment action filed by United would be stayed, as this would require putting the proverbial cart before the horse, procedurally speaking. Moreover, this decision will be the lone

responsibility of another district judge. Yet, as it is possible, the Court believes that granting GRP's instant motion and keeping all of GRP's claims against the defendants in the same suit will best serve the interests of judicial economy. For these reasons, the Court **GRANTS** GRP's Motion to Reconsider based upon its **Rule 20** argument. Consequently, the Court finds it unnecessary to discuss GRP's other arguments for reconsideration.

### III. CONCLUSION

The Court hereby finds that GRP can assert a right to relief severally among defendants United, Kienstra and RCS with respect to its claims in the instant suit. Further, the Court finds that the **Rule 20(a)** procedural requirements for joinder of defendants has been properly met in this case, as GRP's claims against Defendants arise from the same transaction and there exists a common question of fact. The Court further finds that it best serve the interests of judicial economy to keep GRP's claims against defendant United and its claims against defendants Kienstra and RCS together in the same suit.

As such, because of the misapplication of law regarding the **Rule 20(a)** procedural requirements and in light of elucidative case law the Court has uncovered, the Court finds GRP has met the **Rule 59(e)** standard warranting its Motion to Reconsider. Accordingly, the Court **GRANTS** GRP's Motion to Reconsider. The Court's previous order granting United's Motion to Sever (Doc. 36) is hereby **REVERSED**. Therefore, the Court's previous order granting in part and denying in

part GRP's Motion to Remand is also hereby **AFFIRMED IN PART** and **REVERSED IN PART**.  Because the Court now finds that GRP's claims against defendants United, Kienstra and RCS should remain joined in one single suit, there no longer exists proper federal subject matter jurisdiction and the Court must **REMAND** this entire case back to the state Circuit Court of Madison County, Illinois.

    **IT IS SO ORDERED.**

    **Signed this 11th day of January, 2006.**

                                                       /s/        David RHerndon
                                                 **United States District Judge**